316-0024, Curtis Simpson v. Workers' Compensation Comm'n, City of Peoria. Counsel? Good morning, Your Honors. Robert Bach for the petitioner, Curtis Simpson. Mr. Roberts, may it please the Court. This case involves, as I'm sure you know, the presumption under Section 6F of the Workers' Compensation Act, Section 1B of the Occupational Disease Act, which provides that there are certain presumptions for conditions or impairments of health that apply to firefighters who have served for more than five years in that capacity. My client served 33 years, and obviously this presumption is applicable to his case. There's no question about that. The question is, what do you believe it takes to rebut the presumption? I mean, it is a rebuttable presumption, correct? It is. Okay. So in this case, the Commission believed that Fentel's testimony rebutted it, right? Yes. So why didn't Fentel's testimony rebut it? Because the evidence from Dr. Fentel was not of the weight or strength that should be required to overcome this presumption based upon the Supreme Court case decision in Franciscan Sisters. What Fentel said was, in my opinion, my opinion is that in the presence of these significant risk factors for coronary artery disease, the hypertension, hyperlidemia, mild family history, male sex, that, the claimant, was the essential kind of powder keg waiting to explode. That is, he had risk factors for coronary disease that were the cause of his arteriosclerosis, and that the events that occurred while working in his garage in January 12, 2008, were the culmination of that process. And the mild heart attack that resulted was the direct correlate or consequence of the risk factors leading to his underlying coronary disease. Now, isn't that evidence contrary to the presumption? It is evidence contrary to the presumption if our burden is to prove that there was a cause or the cause for the arteriosclerosis and the heart attack. Our burden under CISPRO is to prove that his employment was a cause, which is presumed. And the presumption, according to the Franciscan Sisters case, is a strong one because it's a statutory presumption, and it therefore requires strong evidence to overcome. Simply because it's a statutory presumption, does Franciscan Sisters say that all statutory presumptions are strong presumptions? I think it can be read that way based upon the quote from Cleary and Graham, but it doesn't specifically say that. What it does say, though, is that the rule in Diedrich, I think what they do is back up on Diedrich and Franciscan Sisters. I think in Diedrich, the Supreme Court said, if you introduce any evidence contrary to the presumption, it disappears. Seven years later, when they decided Franciscan Sisters and realized that that wasn't true, it didn't apply to all presumptions, such as the presumption in Franciscan Sisters of undue influence, which they say requires clear and convincing evidence. It's almost like the transitive property, if I may. Of course, it benefits me, so I'll use the transitive property. They say that statutory or strong presumptions require great evidence, and then they go on to say that that particular strong presumption required clear and convincing evidence. The Commission decided in its order that this was a strong presumption, that as a statutory presumption, it's entitled to that status. I think that makes sense. Let me ask you a question. Please. I want to go further into what the doctor testified to. He went on to say, as such, I do not believe the cardiac event was caused or precipitated by his work as a firefighter. Now, that's pretty strong. He says, I don't know what he does for a living, and I agree that cardiovascular disease is not well understood such that all we can do is identify risk factors. And he says, there are other risk factors besides the ones that I know of. And as we all know from the evidence here, every doctor in this case agrees that he had hypertension. Hypertension is a presumed condition under the statute. The statute specifically says any condition or impairment of health of a firefighter which results directly or indirectly from heart or vascular disease or condition or hypertension resulting in any disability. Now, I think that makes it clear that one of the presumed ailments or conditions is, by the agreement of every doctor in the case, a risk factor for the development of cardiovascular disease. I'm sure that you hear cardiovascular disease cases all the time and are very familiar with the doctor's inability to pinpoint an exact cause. That's what makes the evidence in this case that attempted to overturn or overcome the presumption lacking. And here's the other thing. Wait a minute. I don't understand. Why is it lacking? I mean, the commission could disbelieve him. There's no question about that. They could have turned around and said, we don't find him credible, so therefore it's not contrary evidence that overcomes the presumption. But the man said it. And the doctor said it. Do not believe that the cognitive event was caused or precipitated by a work as a firefighter. Went on to say that the medical evidence, namely documented risk factors presenting clinical history, all sorts of findings, were that his event of 1-12-08 was due to the progression of coronary arteriosclerosis, narrowing of the arteries, which in turn was the result of the underlying risk factors. Now, the man has said that work as a firefighter did not cause the cardiac event or did not precipitate it. Why isn't that sufficient evidence to rebut the presumption so that now the claimant has to come forward with evidence to support the allegation that his work was a cause of his ailment? Because he doesn't know what firefighters do for a living. He didn't consider any occupational causes. That goes to the weight, doesn't it? It goes to the weight. It goes to, when you're talking about a strong presumption, and as Justice Hoffman indicated, he's looking for strong evidence. I think it affects the strength of the evidence. I'm only looking for, I didn't say I was looking for strong evidence. I said I was looking for contrary, contrary evidence. I apologize. I didn't mean to put words in your mouth. But when you ask, doesn't that constitute strong evidence, I don't think it constitutes strong evidence. I only want to ask, does it constitute contrary evidence, contrary to the presumption? Counsel, just for purposes of responding to the question that's asked, assume for that purpose that it's not a strong presumption that's involved, but it's an ordinary presumption. And so it's just simply contrary evidence that is necessary. So can you just, I understand your position that it's a strong presumption, but in responding to that question, assume it's an ordinary presumption. I don't think it's contrary evidence in this particular factual setting where there are a number of risk factors, no known causes that can be pinpointed, and our burden is only to show that his employment was a cause and the presumption is that one of the risk factors is a presumed condition. That seems to be something, Percy, not to interrupt you, finish your thought, but are you done on that subject? No, please go ahead. Here's the question. Does the issue of the quantum of evidence or the nature of the evidence to rebut the presumption necessarily intertwine with the issue of whether it was a cause? Why did the two of them have to be decided together? Can't you deal with whether or not the evidence was sufficient to rebut the presumption and then get into the issue as to whether the evidence still shows that the firefighting duties was a causal factor but not maybe necessarily the primary or main factor? Why does it have to be considered together? Or are you saying they have to be considered together? I'm not. I'm saying that with respect to that issue, overcoming the presumption that a cause needs to be, that goes into the consideration. The ultimate issue in the case. Yes. All right. Can I ask you a very plain question before I forget? Pardon me? Can I ask you a very, well, go on, finish your thought. Sure. No, go ahead. If an expert says, does the expert have to testify, I don't believe this firefighting duties had anything to do with the cause of the heart attack? Or could the expert say, I believe that the cause of the heart attack is being overweighted smoking? The first one. It has to be the first one. Yes, because no expert testified that there is a limit to or not other types of risk factors that weren't considered by this doctor in coming to his conclusion. But your argument is an argument against the credibility of the opinion that was given. Who makes the determination as to whether the evidence submitted by the respondent is sufficient to overcome the presumption? Who makes that determination? The arbitrator initially and then the commission. Well, the commission makes it, and Franciscan Sisters says it makes it, but Franciscan Sisters talked about it in the context of a trial judge making a determination as to whether a presumption is overcome such that you would give a presumptive instruction to the jury. But in this particular case, the commission not only made that decision, but said why they made the decision. And they said respondent has successfully rebutted the presumption by providing strong evidence through its expert opinions along with the petitioner's own health history, work history, and the petitioner's own testimony to show that there are other causes of the petitioner's cardiovascular problem and his condition is not related to his employment as a firefighter. It goes on to say in the next sentence very simply, the presumption having been successfully rebutted, now the commission will weigh the evidence to make a determination of whether he's proved his case. I believe that's a non sequitur in this particular setting. I don't believe that evidence of other causes overcomes a presumption that it's causally related when the only expert testimony is we can't determine a cause. All we can do is identify risk factors and there are other risk factors. That's not what this expert said. I can understand that you have evidence from another expert that says that the risk factor is known and all the rest of it, but the fact of the matter is he actually said, and I'll read it again, as such, I do not believe the cardio event was caused or precipitated by his work as a firefighter, period. Now, if you want to argue that the commission should have found that to be an incredible statement, you can make the argument, but we know who judges credibility and it's not us. So the problem that I have is in the face of that sentence, how can you suggest that the respondent did not introduce evidence contrary to the presumption such that the presumption fell and the claimant was then put to his proofs? Only by, as I said, arguing that the nature of that evidence did not exclude occupational factors, which I think it had to, to meet the presumption, which is that there are occupational factors. When you don't have a closed sentence, when you don't have... How would you overcome the presumption based on your theory? What would the man have to say? Inhaling smoke doesn't cause heart attacks? I am not probably going to be able to come up with an exact... If it's a rebuttable presumption, it has to be rebuttable. How about this? The petitioner worked as a firefighter for five years and stopped working at age 25 and worked another 30 years in other industries and then had arteriosclerosis and a heart attack. And the expert says, based upon that limited exposure, I do not believe that those occupational factors, whatever they were, could have played a part or a role in the causation of this condition. This man worked 33 years as a firefighter. And let me please get this in before I forget. This stuff about an administrative job, that's a red herring. First of all, there's no evidence anywhere from any doctor that says this arteriosclerosis would have developed over X number of years, that it couldn't have developed in the first 22 and manifested itself in the last 11. And in addition, the petitioner testified that his role wasn't entirely administrative and that he was still required to participate in some of the activities that would have given rise to his occupational exposures, including going to fires. I go back to some place here. I go back to with respect to the manifest way to the evidence. With respect to assuming the presumption was rebutted, what is it that the Industrial Commission, the Workers' Compensation Commission, found, relied upon to deny this case as compensable? And I'm going to quote the same language that Justice Hoffman quoted, strong evidence through its expert's opinion along with petitioner's own health history, work history, petitioner's own testimony. Not one specific thing do they say, this is what we're relying on as rebutting the presumption. But assuming that that's enough, that you can just generally say those are things without saying what parts of it or why or anything else, they go on down here. The Commission finds that Dr. Fentel is better credentialed and possesses a greater foundational understanding of the petitioner's condition than Dr. Weaver. Dr. Fentel is a very well credentialed cardiologist. He reviewed records in this case. He never talked to my client. He doesn't know anything about firefighting. He never examined my client. Dr. Weaver is the director of the Occupational Medicine Residency Program at Johns Hopkins Medical School. She's board certified in internal medicine and in occupational medicine. She gave an extensive deposition that was introduced into evidence, which indicates that there were a number of risk factors for the development of coronary artery disease that were identified as being specific to firefighters. That is a weighing process, I understand. But foundationally, Dr. Fentel had no foundation other than reviewing records. And he made significant errors in his testimony. Let me see if I can call out the essence of what you're saying. You're saying Fentel's opinion was flawed because he was lacking the essential necessary foundational elements for the opinion, whereas the other doctor, your expert, had those considerations. Is that sort of just the reason? Particularly given the occupational exposures and occupational risk factors versus the non-occupational ones. I understand that that's the hurdle here. He had non-occupational risk factors. You asked Justice Hoffman a minute ago, how will anybody ever overcome this presumption? What good will this presumption be and what protection will it offer to first responders if the only thing a cardiologist has to do is say, well, come on, this guy was fat too. And he was male sex. I'm sure there are risk factors, but we're never going to be able to overcome that burden. If you create what you're talking about, it's no longer a rebuttable presumption, it's a conclusive presumption. Because they'd never be able to defeat it. And interestingly enough, in the legislative history, as we went over this yesterday, of this particular bill, someone wanted to make it a conclusive presumption, and the legislature rejected it and created a rebuttable presumption. So in a rebuttable presumption, it's nothing more than it establishes a prima facie case, which if not rebutted is sufficient to meet your burden of proof. But if contrary evidence to the presumption is introduced, the presumption disappears. It's not weighed along with the evidence. If the Supreme Court agreed with that, then why did they say, in Franciscan Sisters, the amount of evidence that is required from an adversary to meet the presumption is not determined by any fixed rule. A party may simply have to respond with some evidence or may have to respond with substantial evidence. Now, all I'm suggesting to you, I can't characterize this presumption for you and point to black and white where the Supreme Court said this or we wouldn't be here. But I do think the Supreme Court there is saying we made a mistake in Diedrich by giving you the impression that all presumptions are overcome by any contrary evidence. And they say that. They say in the sentence before that, speaking about Diedrich, the court did not indicate what quantum of evidence would be necessary. Well, if there is no quantum of evidence because it only has to be contrary. Whoa, whoa, whoa, whoa, whoa, whoa. And if we bite on that fishhook, you'll realize that. Contrary, what they're saying in Franciscan Sisters is, how much evidence do you need for it to be contrary? They didn't retreat from Diedrich. It's still the same law. They've got to submit contrary evidence. In Franciscan Sisters, the Supreme Court said the contrary evidence must rise to the level of clear and convincing. Now, if you want to make the argument that based upon this presumption, the contrary evidence must be something more than a mere preponderance, that's a valid argument. But to suggest that they retreated with anything contrary is not true. Contrary is defined in Franciscan Sisters is the quantum necessary based upon the issue in controversy. In this particular case, unfortunately, the commission found that the evidence that was submitted was strong. They didn't really say it was a preponderance. They said it was strong. Well, and it clearly wasn't. And that's part of the error here. I mean, if you continue down here at the bottom, Dr. Finto, we already talked about that. Additionally, his causation opinion is supported by, which is not a causation opinion, in my opinion. It's a citation of other risk factors, but we can agree to disagree on that. The causation is supported by the opinions of Dr. Scott. Dr. Scott said, I don't believe his cardiac event was caused solely by wart factors. That's the same thing. No, it wasn't caused solely by wart factors. It was caused by other risk factors related to his employment as well as non-risk factors. That's always going to be the case in cardiovascular. And then they go on to say that the causation opinion of Dr. Ayers also added to overcoming the causation opinion of Dr. Weaver. Dr. Ayers didn't even express a causation opinion. Dr. Ayers, Dr. Malak, and Dr. Scott were examining doctors for the pension board hearing where my client was granted a duty disability pension. And Dr. Scott, who his strongest opinion was, I don't think it was solely caused by work, is the city's doctor. So you can characterize it any way you want. They can use the word strong, and they can say this is a strong presumption, it was overcome by strong evidence. Whether it's a strong presumption or not is up to you to decide. This is clearly not strong evidence. Mr. Bond, this Court had occasion to consider a statute, not this statute, but one involving pneumoconiosis. And the case name is SETZORN, S-E-T-Z-E-K-O-R-N. And the citation is 353 Illinois Appellate Court Reports 3rd, 1049. And the statute, it's similar in that it involves a rebuttable presumption. It's Section 1 of the Occupational Diseases Act. And it states, if a deceased miner was employed for 10 years or more in one or more coal mines and died from a respirable disease, there shall be a rebuttable presumption that his or her death was due to pneumoconiosis. So just taking your argument here, what would be necessary on the part of the employer to rebut that presumption would be an expert's opinion that the worker's death was not due to pneumoconiosis, right? Yes. Okay. This Court, immediately after reciting the statute, stated, claimant must show that the disease which caused deceased's death was a respirable disease and that the disease reported suggests a reasonable possibility of death due to pneumoconiosis. So in that case, we framed the analysis not that the employer's expert would have to exclude pneumoconiosis as a cause of death, but just that it was a reasonable possibility of death due to pneumoconiosis. So our prior handling of a rebuttable presumption in a comparable statute would be more along the lines of what Justice Hoffman is describing, just simply that there is contrary evidence as to the cause of, in that case, death. In your case here, contrary evidence that the condition was employment-related. So did this Court get it wrong in such form in terms of framing the analysis? I don't believe that the medical evidence is exactly parallel. Well, and it may be unfair for me to put it in those terms, but what I did is I took Seppsicorn's language and I put it in terms of the statute that we have here. If I can find it. Finish your thought and I'll get back to you. So I'm just saying that I'm not fully up on pneumoconiosis as a condition. I know with respect to this particular condition, as I've argued and as I've briefed, I think that the lack of clear understanding of causation opens up a number of possibilities for causation that the doctors like to use the words risk factors, and I'm only suggesting that when there are occupational risk factors as well as non-occupational risk factors. And under the CISPRO case, I think if we decide that, as Justice Hoffman suggested, that this testimony about other causes and the finding here of other causes is enough to not only overcome the presumption but defeat the case, I think it substantially diminishes the CISPRO decision. Because I don't think at that point we're talking about a cause anymore. I understand your point, and I've got my notes here. So just transferring presumption in our case to the analysis that the court used in Seppsicorn, the way this would read would be, in our case, any condition of a firefighter which results directly from vascular disease suggests a reasonable possibility it was causally connected to his employment. So that's substantially different than the CISPRO aid cause. And so I would assume you would say the analysis in Seppsicorn was incorrect and shouldn't be applied in this case, but it is there. I understand, and I don't think it applies in this case. Again, not having a depth of understanding of pneumoconiosis that I have from studying this case in cardiovascular diseases. I think it's the nature and the type of the evidence that has to be induced to meet the presumption that is lacking here. With all due respect to Dr. Fentel's opinion, which is a general opinion about other risk factors, as I said, I have a difficult time conjuring up a presumption that is not rebutted in a cardiovascular case for a first responder who is over the age of 40. I don't see it. Because every one of these people is going to have these risk factors, and then the doctor is going to say, gee, I don't know. In my practice, we've taken heart attack depositions from cardiologists time after time after time, and on direct you get exactly what you want. Yes, I do believe that a minor could have been a factor or causative factor in the heart attack, and then the defense gets the same thing on the other side. You could have a heart attack in your sleep. You could have a heart attack any time. No one knows. We don't know why the plaque dislodges from the artery, forms the clot, causes the heart attack, and they're found to be compensable because it's a cause, not because it's the cause. We've gone way over on that you have time and reply. Okay, very good. Thank you. Thank you.  Thank you, Your Honor. May it please the Court. Mr. Mott, counsel, my name is Boyd Roberts with the Hasselberg, Grebe, Snodgrass, Urban, and Wentworth firm in Peoria. I represent the respondent of the city of Peoria in this matter. I'd also make mention that my associate Kyle Tompkins, who worked extensively on this appeal, is also present today. I think the first thing that we need to get out of the way is that this is a rebuttal presumption. It's not a conclusory presumption. I think everyone agrees with that. Very good. Just to eliminate any confusion, it is a rebuttal presumption. So the question is, what evidence is required to rebut the presumption? The Deder case, which came out from the Illinois Supreme Court, says evidence which is contrary to the presumption must be put forth by the, in this case, the respondent in order to successfully rebut the presumption. It doesn't say, it doesn't classify what type of evidence, the amount of evidence, the quality of the evidence. That's why your opponent argued Franciscan Sisters, because Franciscan Sisters is the extension of Dietrich. Dietrich says evidence contrary to the presumption. Franciscan Sisters says, wait a minute, in Dietrich we didn't tell you the strength of the evidence necessary in order to be contrary such that it overcome the presumption. In Franciscan Sisters, in the facts situation they were dealing with, they said the evidence had to be clear and convincing. Your opponent suggests that the evidence to overcome this presumption has to be strong evidence. I'm not sure that that's actually a term that we apply to evidence. It's either, you know, clear and convincing, it's beyond a preponderance, it's a reasonable doubt. But at any rate, he suggested something more than just some evidence. It has to be of a quantum. And he says that Fiddle's opinion doesn't rise to that level. Well, in speaking to Franciscan Sisters, the first thing to note is I agree, unlike Cousil, that this is, that Franciscan Sisters is a clear extension of Dietrich. It doesn't. I don't think that's disputed, but go ahead. But the reason in Franciscan Sisters the Court created, the Supreme Court created the clear and convincing standard was due to the relationship that was at issue between the litigant parties, mainly an attorney-client relationship. And the Court describes that that type of relationship is sacrosanct such that it requires a high level of evidence. And in that case, they ruled that it was clear and convincing. In this particular case, we have an employer-employee relationship. Oh, yeah, but you've got something more here. The legislature found necessary to pass a statute to protect a specific group of employees, firefighters, because there was some type of a relationship between what they're exposed to at work and all of these maladies that are listed in the statute. So this isn't a simple employer-employee relationship. This is a relationship of firefighters to their employer vis-à-vis their lung disease or their heart disease. So it's not that simple. It's going to be up to this Court to determine what type of presumption this is, whether it's strong, whether it's ordinary. But really, it's the application of the rebuttable presumption and how that was processed in the commission that I think you ought to be spending your time with here. Because Mr. Bach has suggested the presumed fact here is that the claimant's employment was causally or, excuse me, the claimant's condition was causally connected to his employment. The presumed fact was that it was a cause. The employment was a cause of his condition. If that's the case, if it's a CISPRO-type situation here at the rebuttable presumption stage, how do you overcome that? I don't agree that it's a CISPRO analysis at the presumption, at the rebuttable presumption stage. So tell us why that shouldn't be the case. Well, I think you cannot weigh evidence between the parties, the evidence put forth by the petitioner and the evidence put forth by the respondent, in determining the presumption. What is the presumed fact, then, from your standpoint? The presumed fact is that you have a firefighter that's worked five years or longer and that they developed, in this case, a cardiovascular condition. The presumed fact is that that arose out. Two presumed facts. That it arose out in the course of their employment and that it's causally connected to their employment. And I believe that the evidence shows that it's not a cause, that when you look at the evidence put forth by the city, by the respondent in this matter, being not just a cause. Yeah, let's parse these words a little more carefully, this presumed. Now, doesn't the statute say there are two facts to be entitled to the presumption? One is that you worked five years or longer in the duty of firefighter, occupational firefighter. And two, that you have a condition. That's correct. Okay, that's not presumed. No, that's not. Those are facts. Well, you kept saying that. Those are facts. That entitles the individual to have a presumption of what? That it arose out of and in the course of their employment and that it's causally connected, to answer your question. Right, right. I just, we throw a lot of words around here. Let's stay right within that statute. Understood. Okay. And in this case, respondent put forth strong, and the commission classified it as strong evidence. The commission classified this presumption, being a legislative one, as strong. Whether that's true or correct, I'm going to go with true, because I still think it benefits me, because they ultimately decided on behalf of the respondent. Okay. Again, putting aside the strength of the evidence, Mr. Bach is suggesting that the presumption is, is that the employment was a cause of the condition, and therefore evidence to the contrary would have to be that the employment was not a cause. So do you agree or disagree with that as the framework? I agree that the burden of production is put on the respondent with the presumption to put forth evidence that the employment is not a causative factor in the development of the cardiovascular disease. So then you agree the opposite way of saying it is, then you agree that the presumption is that his employment was a cause of his condition. That's the presumption. Correct. That's the presumption. It must be overcome. Now the question is, what does it take to overcome it, number one, and number two, did you? It takes a strong evidence to overcome it, and which is not legally defined by any, I was not aware of the case Justice Harris put forth, but it's not legally defined in any of the materials I research that talks about the level of evidence, the amount, quantity, what have you. Didn't we get a glimpse in Franciscan, I mean, why would the legislature, I'm wondering, enact this statute if there wasn't a heightened concern about protecting firefighters and first responders? Are you suggesting it can be overcome by any evidence at all? What's wrong with making it clear and convincing? Because I don't think if they intended to make it clear and convincing, one, I think they had the opportunity to put that into the legislation itself. Well, let's go to the object of the evidence, okay? Once again, I'm real simple on this. Let's go to the object of the evidence. Forget the quantum and all of that. What is the object of the evidence that you have to, under this framework that Justice Harris has articulated, what is the object of the evidence that you have to come forward with? The object of the evidence is to show that the petitioner's condition and actually his subsequent heart attack. Well, let's stay within the statute. Was not a causative, did not arise out of his employment and or was not a causative factor. That's the object of the evidence. The evidence has to show that. The evidence we, the city put forth in this matter with Dr. Fittell's opinion and based on petitioner's own work history where he hadn't been on the front line of a fire for 10 or so years at the time when he had his heart attack. That combined with... Yeah, but that standing alone without Fittell's opinion would not have made your case. It would not have overcome that presumption. I would not have gone to trial if that was just the case. Well, you wouldn't have won it if you had. But the fact of the matter is that your case has to rise or fall on the question of whether Fittell's opinion that it was not caused by his occupation as a firefighter is sufficient to overcome the presumption and then put the claim back to his burden that he always had in his mind. So the question is, I suppose, really the argument here is, you know, we can talk about all of these esoteric points, but the question simply is, is Fittell's opinion sufficient to constitute contrary evidence in the meaning of Dietrich and Franciscan sisters such that the presumption fell? That is the overarching question. It is the question. It's the only question. I believe it is sufficient. I believe Dr. Fittell's opinion is sufficient to meet the standard as delineated by the Supreme Court in Dietrich. He gives a lot of reasons, but his opinion can be boiled down to a single sentence. As such, I do not believe the carding event was caused or precipitated by his work as a firefighter. And that's it. Either that's enough to overcome the presumption or it isn't. Because that is directly contrary to the presumed fact, which Mr. Bach is suggesting, that his employment was a cause of the condition. True? Agreed. Okay. And in addition to what Justice Hoffman had read, in fact, this was what he had initially read to Mr. Bach, when Dr. Fittell was identifying risk factors, he went on to say he had risk factors for coronary artery disease that were the cause of his atherosclerosis. And so that also, I would assume from your standpoint, was sufficient evidence to rebut that presumptive fact that the employment was a cause of the condition. I agree with that assessment of Dr. Fittell's testimony. And I think that that, while Fittell's testimony, our position is Fittell's testimony in and of itself, his opinions are sufficient to rebut. We didn't just stop there. There's other pieces, probably not in and of themselves, that are sufficient enough to rebut. But combined with that, raises to the level of strong evidence. Do you have other evidence other than Fittell's opinion that you think in and of itself is sufficient to overcome this presumption? What is it? No, not in and of itself that is strong enough. So the question, though, really, the evidence other than Fittell's opinion, certainly the other evidence that Fittell bases his opinion on goes to his credibility. And, you know, the commission could have turned around and said, yeah, we heard your opinion, we don't believe you. And therefore, the presumption has not been overcome, and he's still entitled to a presumption. But the other evidence that you're talking about is not evidence that goes to the question of the overcoming of the presumption. It's the other evidence that the commission weighs after the presumption has been overcome to determine whether there's a causal connection. Because merely because the presumption has been overcome doesn't mean the firefighter loses. He can still win on the merits. They can turn around and say, look, yeah, you introduced an opinion that overcame the presumption. Fittell's opinion overcame it. But we have his doctor's testimony, we have all sorts of other factors involved, and we say he wins. There is a causal connection. You're absolutely right. Just because the presumption is overcome doesn't mean the case is over. Exactly right. It's like a race of some sort. So what do you have, then, that Mr. Brock can reply to what he feels that once we've moved past that hurdle, what do you have besides that doctor's opinion? To rebut? No. Well, to rebut subsequent evidence that's being presented by the claimant. Or are you going to say Dr. Fittell's opinion does both? Well, I think it does do both. I mean, it clearly goes, it's put forth to rebut, and then after the presumption is rebutted, then we get into a balancing of the weight of the evidence. Exactly right. And in that particular case, it's not a question of the employer's requirement to rebut. The employer puts forth his evidence, the claimant puts forth his evidence, and the commission determines whether it's been proven by a preponderance on the part of the claimant. Where the burden always lied. It was always with the claimant. It never ceased to be with the claimant. Correct. The only burden that was a burden of production at the onset for the presumption. To address specifically the additional evidence we had today, Justice Hoffman had talked about the only thing we had to rebut the presumption is Fittell. That is the main point that is probably some large percentage, 80, 90 percent of what we have. But I think that the other factors, the fact that the petitioner had not worked on fire, the fact that he was working at home, not on duty at the time, and he had fought a fire, had performed any firefighting duty, and the commission talked about this in their decision. He was not on call. He wasn't actively fighting a fire. He had come off of fighting a fire within any significant amount or reasonable amount of time thereafter when he had his heart attack. That was to a rise in obligation. But wait a minute. That's kind of a red herring. This statute wasn't passed to protect firefighters that keel over at a fire. They don't need a statute to protect them from that because they're going to recover if they inhale smoke and they're injured at a fire. This statute was enacted to protect them from the long-term effects of their employment. And that heart attack can take place on the golf course. It doesn't make any difference. The heart has been weakened because of the employment, so they've protected it. But the question becomes as to whether the heart attack or the event is causally related to that employment. So the only question here is whether there is evidence in this case, number one, to rebut the presumption that was created. And the argument obviously is Fentel does that. But then you go to the burden of proof. The claimant puts in his proof. The respondent puts in theirs, Fentel's appointment, and all these other risk factors. And then the commission weighs it. But it could go in either direction. But the argument that your opponent is making is not to the second half of the decision. Your opponent's argument is strictly addressed to the question of whether you have submitted a sufficient quantum of evidence to overcome the presumption. That's really the only argument he has. I think that's accurate because if we don't rebut the presumption, we can't get to a weighing of the evidence between the parties. Exactly right, because you can't weigh the presumptions against evidence. Right. And if the court finds that we didn't rebut, I can't win. If the court finds that we did rebut, I think our petitioner is going to have a very difficult time winning based on the manifest weight standard. It's a manifest weight argument. Very good. Your time is up. Thank you. Thank you. Counsel, you may reply. Thank you, Your Honor. I just want to reiterate that when Mr. Roberts talks about the risk factors that Dr. Fentel identified and, as Justice Harris pointed out, actually used the word the cause, he also testified that the causes of cardiovascular disease, the development of atherosclerosis, was not well understood in terms of causes, and the best that we could do was identify risk factors. But even if we assume that among the things that that doctor in that testimony under oath said were the cause of the atherosclerosis, among those factors is hypertension, and hypertension is presumed to be a condition in this case. And so if that condition... Now, they brought up in their brief that we somehow waived this because we didn't put it in the application. We didn't claim it as a separate entry because I didn't believe that we could identify any disability or anything else separate and apart from the cardiovascular disease. In other words, it was a contributor. But that's exactly what indirectly causing one of these conditions means, in my opinion, in the statute, in the presumption, that hypertension indirectly caused or maybe even directly caused the cardiovascular disease which led to the heart attack. And that's presumed. And there's no evidence against it. Now, yes, there is. The last sentence of Dr. Fentel's opinion. The evidence in the medical record, namely the claimant's documented risk factors, presenting clinical history and angiographic findings strongly suggests that the event of 1-1208 was due to the progression of coronary arteriosclerosis, narrowing of the arteries, which in turn was the result of the underlying risk factors. So he did give an opinion that the arteriosclerosis was caused by the underlying risk factors, which he identified as not being his work as a firefighter. Well, but one of those risk factors is hypertension. Which he ‑‑ Well, on what basis? I don't know on what basis he excluded ideal factors. Because he said, I do not believe that the cardiac event was caused or precipitated by his work as a firefighter. Now, you can't change what the man said. He said it. The question is, is it strong enough? You can stand there and deny he didn't say it, but he said it. So is it strong enough? I would not deny that he said it. But I would point out that every doctor that expressed an opinion about the risk factors, which were identified for this gentleman, included hypertension as a presumed condition. And if it's a presumed condition related to his employment, it has to be overcome again. Then we get into the weight of the evidence. I don't think the doctor's statement, that general statement that his work didn't have anything to do with this, is either going to carry the day or it's not. Exactly. Because that's about all there is. You just hit it right on the head. That's about all there is. The rest of this is conversation. But for the commission to say that he had a better foundational understanding of this situation, I think is completely contrary to the record. He was a record reviewer, paid by the city. He does this all the time. I won't go into the testimony of how much money he makes doing this or whatever, but I think it's just simply a case where he came to a conclusion without any specifics, without even considering what the job was or what occupational risk factors might have played a part, because, after all, he's not an occupational doctor. Thank you. Very good. Thank you, counsel, both, for your enlightening discussions and arguments this morning. This matter will be taken under advisement and written disposition shall issue.